HAMES *v.* STURDIVANT, chief of police.

No. 10947. NOVEMBER 16, 1935.

No. 10950. NOVEMBER 16, 1935.

*J. B. Wood, James R. Venable, Frank A. Bowers,* and *Robert F. Turnipseed,* for plaintiff.

*John A. Boykin, solicitor-general,* and *J. W. LeCraw,* for defendant.

GILBERT, Justice. Frank Hames sued out a writ of habeas corpus in the superior court of Fulton County, alleging that he was illegally detained by T. O. Sturdivant, chief of police of the City of Atlanta. While being detained, the Governor of the State had issued its warrant of extradition to release the prisoner to the State of Alabama as a fugitive from justice. Upon the hearing of the writ the court remanded Hames to the custody of the officer. Hames filed his bill of exceptions to have the case reviewed by this court, and on the following day applied for a supersedeas bond, which was denied. Petitioner excepted.

The exact question has not been before this court, but we think it is controlled by *Irwin* v. *Jackson,* 34 *Ga.* 101, where it was held: "The filing of a bill of exceptions to the decision of the

judge below in habeas corpus cases does not operate as a supersedeas. But the applicant must remain in the condition in which he is placed by the judgment, whether exception be taken or not." That principle was recognized in *Southern Express Co.* v. *Lynch,* 65 *Ga.* 240, 244, in *McLendon* v. *Smith,* 68 *Ga.* 36, and in *Cummings* v. *Clegg,* 82 *Ga.* 763, 766 (9 S. E. 1042). In the *Irwin* case the court quoted from the provisions of the law as to when a bill of exceptions shall operate as a supersedeas, which provisions are now set forth in the Code of 1933, §§ 6-1002, 6-1005, and which relate to civil or criminal cases, and as to which the court said: "These are the only cases in which the bill of exceptions operates as a supersedeas. In civil cases, where the costs are paid, and a bond with security given for the eventual condemnation-money; and in criminal cases where the offence is bailable, upon like terms, except that the bond is given for a sum fixed by the judge, and when not bailable, by the order of the judge; and when the party can not give the bond from his poverty, then the judge orders the supersedeas, but the defendant is not set at liberty." The court then proceeds to show that a bond may not be given under the circumstances of the case: "This case does not fall within any of these provisions. It is a civil proceeding, but there is no eventual condemnation-money, and no bond can be given to protect it. It is not a criminal cause; yet the personal presence of the party suing out the writ is required, and must be secured, before he is discharged upon the filing of the bill of exceptions; else injustice may be done to the service by the loss of a soldier. No bond is authorized to be given, so as to compel his attendance to abide the order, judgment, or sentence of the court, and yet that attendance is necessary; nor could the court require a bond to be given, for there is no one authorized to collect or to recover the money in case of its forfeiture; besides, money would not compensate the loss to the service of the soldier. The case is not provided for by the letter of the statute, and by the enumeration of the particular cases in which a supersedeas is allowed all others are excluded; nor is the case within the spirit of the law, for the reasons I have already given." That was in a case where the petitioner was sought to be impressed into the military service during the Civil War; the present case involves extradition to another State, and the latter is likewise one in which there is no provi-

sion for a supersedeas or bond pending an appeal. The matter of rendering one from an asylum State to another State by extradition proceedings is not founded merely on comity between the States, but is in response to a requirement of the United States constitution, which provides in art. 4, sec. 2 (Code of 1933, § 1-403) : "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." By the act of Congress of February 12, 1793, reenacted as § 5278 in U. S. Rev. Stat., U. S. C. A. title 18, § 662, it is provided : "Whenever the executive authority of any state or territory demands a person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." It will be observed that in neither the constitutional nor the statutory provision is there any mention of supersedeas or bond. The weight of authority, too, is that when a person is in custody under an extradition warrant he is not entitled to bail. 25 C. J. 270, § 44. There is a very practical reason, also, why bond should not be granted. The State, having no interest, could not sue upon it if the prisoner flee the realm pending the appeal. If given to an officer or individual, he would have no interest in any "eventual condemnation-money" or the like, as appertains in a civil case. Furthermore, if a bond be given, there is nothing to prevent the flight of the accused, and by repeated habeas corpus proceedings he would, in effect, though each time apprehended, be able to defeat the administration of the law of the State where he is charged with a crime. By denying him bond and letting him be rendered

to the State whose requisition the Governor has honored, the court does not deprive him of the right to obtain bond in the State to which he is returned. That is the forum in which his liberty should be sought; and if he elect to test, by habeas corpus proceedings, his detention in an asylum State, and take an appeal when he is by the court remanded to custody, he must remain in that custody pending the decision of the appellate court. It might be added that very thorough discussions on this question may be found in State ex rel. Stringer *v.* Quigg, 91 Fla. 197 (107 So. 409), and Ex parte Thompson, 85 N. J. Eq. 221, 262 (96 Atl. 102).

*Judgment affirmed. All the Justices concur.*